### In re GOLDBERG et al.

(Circuit Court, S. D. New York. June 27, 1893.)

CUSTOMS DUTIES—CLASSIFICATION—JET TRIMMINGS.

Certain so-called "jet trimmings," being ornamental articles manufactured from black glass and iron, glass being the material of chief value, are properly dutiable as "manufactures of glass," at 60 per cent. ad valorem, under paragraph 108 of the tariff act of October 1, 1890, as classified by the collector of the port of New York, and not as "manufactures of jet," or of which jet is the component material of chief value, at 25 per cent. ad valorem, under paragraph 459 of the same tariff act, as claimed by the importers. Held, that the tariff act defined the meaning of "jet" as covering only the mineral substance of that name; especially with reference to Schedule N, Tariff Ind., (paragraph 458 of the tariff act of March 3, 1883,) which provided for "jet, manufactures and imitations of," the provision for imitations of jet being omitted in the act of 1890; and that congress used the word "jet" with the same meaning in the act of 1890 that it had in the act of 1883, referring only to the mineral jet and manufactures thereof.

At Law.

Appeal by the importers from a judgment of the board of general appraisers affirming the decision of the collector of the port of New York in the classification for customs duties of certain merchandise composed of black glass and iron, glass being the material of chief value, on which the collector levied duty as upon manufactures of glass at 60 per cent. ad valorem, under the provisions of Schedule B, par. 108, of the tariff act of October 1, 1890. The importers protested that the goods were manufactures of jet, or of which jet was the material of chief value, and that they were commercially known as jet, and were dutiable only at 25 per cent. ad valorem, under Schedule N, par. 459, of said tariff act. Testimony was taken before the board of general appraisers, showing that the merchandise consisted of various patterns and shapes of trimmings or ornaments of black glass, and commercially known in trade as "jet" or "jet trimmings." There was also some evidence that the articles were known in trade as "imitation jet." Testimony was produced in behalf of the collector tending to show that at the time of the passage of the tariff act there was a real jet known in trade and commerce, but only to a limited extent, and that this jet was the mineral lignite found principally near Whitby, England; that it was sold in the raw state, and also as made up into ornaments such as necklaces, etc. The board of appraisers found, in substance, that the merchandise was known commercially as "jet" and "imitation jet;" that jet was a mineral substance; that the articles

in question were manufactures of glass, and were not manufactures of jet. The board accordingly overruled the importers' protests, and the importers appealed to the circuit court. On the trial in that court it was urged by importers' counsel that all the testimony showed that the articles imported were commercially known as jet or jet trimmings, although admittedly made of glass and iron, and consequently were within the statutory provision for manufactures of jet in paragraph 459 of the tariff act, according to the accepted rule that commercial designations govern in tariff classifications. On behalf of the collector and the United States it was urged that the tariff act had in itself defined the meaning of the word "jet" as used in the different provisions applicable thereto; that the provision of the free list, par. 620 of the act of 1890, "jet, unmanufactured," could refer only to the mineral jet, inasmuch as lumps or pieces of black glass, if not manufactured, could not be held to be unmanufactured jet, and that consequently the same meaning must be given to the provision for manufactures of jet in paragraph 459, which must be held to be manufactures of the same article, namely, the genuine mineral jet. The district attorney cited in support of this contention the provision in Schedule N. Tariff Ind., (paragraph 458 of the act of 1883,) providing for "jet, manufactures and imitations of," especially in view of the fact that the provision for imitations of jet had been omitted in the tariff act of October 1, 1890, so that articles which were in fact such imitations, but were made of glass, were relegated for duty to the appropriate provisions for manufactures of glass.

Edward Mitchell, U. S. Atty., and James T. Van Rensselaer, Asst. U. S. Atty., for the collector and the government.

Stephen G. Clarke, for the importers.

LACOMBE, Circuit Judge. There seems to be a statutory meaning of the word "jet." Evidently the unmanufactured jet of paragraph 620 in the tariff act of 1890 is the material out of which the manufactures of jet provided for in paragraph 459 of the same act are made. This interpretation seems the only correct one, in view of the circumstance that the act of 1883 (paragraph 458) provided for manufactures of jet and for "imitations of jet." There can hardly be a doubt that congress used the word "jet" with the same meaning in the act of 1890 that it had in the act of 1883. I shall therefore affirm the decision of the board of appraisers.